UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **STATE OF LOUISIANA** | **CASE NO. 6:25-CV-01130** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **CAREMARK P C S HEALTH LLC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand filed by Plaintiff, State of Louisiana. (Rec. Doc. 19). Defendant, CaremarkPCS Health, LLC ("Caremark"), opposed the Motion (Rec. Doc. 22). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the Court's standing orders. Considering the evidence, the law, and the parties' arguments, and for following the reasons, the Court recommends that Louisiana's Motion to Remand be denied.

## Facts and Procedural History

Louisiana filed this civil enforcement action under the Louisiana Unfair Trade Practices Act (LUPTA) in state court in June 2025. The state seeks an injunction, restitution, and civil penalties against CVS Health Corp. ("CVS") and Caremark, a CVS pharmacy benefit manager (PBM). (Rec. Doc. 1-1). The Supreme Court helpfully explained the PBM industry as follows:

> Pharmacy benefit managers (PBMs) are a little-known but important part of the process by which many Americans get their prescription drugs. Generally speaking, PBMs serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use. When a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information. After the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment. The prescription-drug plan, in turn, reimburses the PBM.
>
> The amount a PBM "reimburses" a pharmacy for a drug is not necessarily tied to how much the pharmacy paid to purchase that drug from a wholesaler. Instead, PBMs' contracts with pharmacies typically set reimbursement rates according to a list specifying the maximum allowable cost (MAC) for each drug. PBMs normally develop and administer their own unique MAC lists. Likewise, the amount that prescription-drug plans reimburse PBMs is a matter of contract between a given plan and a PBM. A PBM's reimbursement from a plan often differs from and exceeds a PBM's reimbursement to a pharmacy. That difference generates a profit for PBMs.

*Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84, 141 S. Ct. 474, 478 (2020).

Louisiana alleges that Caremark's control over all stages of the pharmaceutical supply chain, including insurance, drug pricing, distribution, and dispensing, violates Louisiana's PBM regulatory statutes and has harmed independent pharmacies and the public. (Rec. Doc. 1-1, ¶13-58). Caremark removed the case to this Court asserting federal jurisdiction under the federal officer removal statute, 28 U.S.C. §1442. Caremark asserts that it provides services to clients who offer health plans through the Federal Employee Health Benefits Act (FEHBA) to

2

federal employees and that these FEHBA clients contract with the federal Office of Personnel Management (OPM), which, in turn, requires certain contractual terms governing pharmacy services. (See Rec. Doc. 22-1). As bound by such federal contracts, Caremark argues that the federal officer removal statute permits federal court jurisdiction over Louisiana's state law claims. Louisiana contends Caremark's relationship with OPM and its federal contracts are insufficient to confer jurisdiction and that, regardless, the state's sovereignty over its citizens' health, safety, and welfare precludes federal court involvement.

## Law and Analysis

### I. Jurisdiction under the Federal Officer Removal Statute.

28 U.S.C. §1442(a)(1) confers federal court jurisdiction and authorizes removal of a civil action commenced in a state court that is against or directed to "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office…" "The statute's basic purpose is to protect the federal government from interference with its operations that would ensue if a state were able to arrest federal officers or agents acting within the scope of their authority and bring them to trial in state court on state-law charges." *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 333 (5th Cir. 2024), *cert. granted sub nom. Chevron USA Inc. v. Plaquemines Par., Louisiana*, 145 S.

3

Ct. 2792 (2025), and *cert. dismissed in part sub nom. Chevron USA Inc. v. Plaquemines Par.,* 145 S. Ct. 2290 (2025).

> Unlike other removal doctrines, federal officer removal is not narrow or limited. However, it remains the removing party's burden to establish federal jurisdiction exists. And if the removing party establishes that one claim satisfies the requirements under § 1442(a)(1), the entire case is deemed removable.

*Id.*

"[T]o remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.,* 990 F.3d 447, 454 (5th Cir. 2021) ("*St. Charles II*"), quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

### A. Whether Caremark is a person.

The "person" inquiry is the easiest, as "the Supreme Court has long recognized that the removal statute applies to private persons and corporate entities who lawfully assist the federal officer in the performance of his official duty." *Savoie v. Huntington Ingalls, Inc.,* 817 F.3d 457, 461–62 (5th Cir. 2016) (cleaned up), (overruled on other grounds by *Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286 (5th Cir. 2020)), citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151, 127 S.

4

Ct. 2301, 2301 (2007). Although Louisiana agrees that Caremark is a juridical person, the state argues that Caremark "was not *the* person contracting with the federal government." (Rec. Doc. 19-1, p. 10, emphasis as written). Louisiana suggests that Caremark is a federal subcontractor, whose relationship with OPM is too attenuated to confer federal court jurisdiction. The argument is better addressed in analyses of the other elements for §1442 removal, discussed below. The Court finds that Caremark, a corporate entity, is a person to which the statute applies.

### B. Whether Caremark acted pursuant to a federal directive.

> To satisfy the "pursuant to" [a federal directive] requirement, a private actor must go beyond mere compliance with the law and instead help the government fulfill other basic governmental tasks. Importantly, acting "pursuant to" a federal officer's directive does not include simply complying with the law, even if the law involves intense governmental regulations. Stated differently: acting pursuant to a federal officer's directions means that the relationship between the government and the private entity extends beyond a regulator/regulated relationship and will typically involve a contractual agreement or agency relationship.

*Martin v. LCMC Health Holdings, Inc.,* 101 F.4th 410, 414–15 (5th Cir. 2024), citing *Watson*.

Defendants rely on a FEHBP Standard Contract for Experience-Rated Health Maintenance Organization Carriers. (Rec. Doc. 1-3). Louisiana maintains the FEHBA contract does not encompass Caremark, a subcontractor for PBM services, and is thus too attenuated to meet the fourth requirement for federal officer jurisdiction. The Court disagrees. The contract includes Section 1.28—Standards for

5

Pharmacy Benefit Management Company Arrangements, which requires that carriers' subcontracts with PBM vendors, like Caremark, include certain standards, terms, and conditions. (Rec. Doc. 1-3, p.25-30). As the Fourth Circuit noted in a substantially similar case, "[t]hough FEHBA carriers are the middlemen between OPM and PBMs, like Caremark in this arrangement, the absence of a direct contractual relationship with the federal government is not a bar to removing an action under § 1442(a)(1)." *W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 198 (4th Cir. 2025) (internal quotes omitted). Hence, Caremark's contracts with any carrier for federal employee health benefits are "pursuant to" a federal directive, satisfying the third element.

### C. <u>Whether Caremark's alleged conduct is connected or associated with an act pursuant to a federal officer's directions.</u>

The fourth element is often the most contentious in federal officer removal cases. *Plaquemines Parish v. BP* is the Fifth Circuit's most recent instruction on the issue:

> Private persons, including corporations, may invoke the federal officer removal statute only if they were "acting under" a federal officer or agency. The phrase "acting under" describes the triggering relationship between a private entity and a federal officer. In describing the "acting under" inquiry, the Supreme Court in *Watson* acknowledged that it is a broad phrase that must be liberally construed, but is not limitless.
>
> In cases involving a private party, the "acting under" relationship must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior. And although a removing defendant need not

6

>show that its alleged conduct was precisely dictated by a federal officer's directive, it must show that a federal officer exerted a sufficient level of subjection, guidance, or control over the private actor. However, the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law. This is true even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.

*Plaquemines Par. v. BP Am. Prod. Co.,* 103 F.4th at 334 (cleaned up; emphasis in original), citing *Watson*, *supra*. See also *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 454-55 (5th Cir. 2021) ("In order to satisfy the "acting under" requirement, a removing defendant need not show that its alleged conduct was precisely dictated by a federal officer's directive…Instead, the 'acting under' inquiry examines the *relationship* between the removing party and the relevant federal officer, requiring courts to determine whether the federal officer exerts a sufficient level of subjection, guidance, or control over the private actor.")

In *Plaquemines Parish*, the Court considered whether oil companies who had contracted with the federal government could invoke §1442 jurisdiction based on contracts to refine oil. *Plaquemines Par.,* 103 F.4th at 338–39. The court emphasized that the source of the federal directive must be the contracts at issue. *Id*. Mere compliance with federal regulations, guidance or expectation—even if the private party is a federal contractor—is insufficient. *Id*. "To the contrary, in cases involving private federal contractors, courts look to the contents of the relevant federal

contracts in determining whether the challenged conduct was 'connected or associated with' acts taken under color of federal office." *Id.*[1]

The FEHBA contract dictates required contents of PBM subcontracts (e.g. Transparency Standards regarding certain costs and fees, Integrity Standards requiring adherence to a code of ethics, and Performance Standards, *inter alia*). (Rec. Doc. 1-3, p. 25-30). The contract imposes affirmative duties on PBMs, such as developing and applying a quality assurance program and submitting reports to the carrier on their performance (p. 28). The contract requires PBMs to utilize a specific protocol for certain drug interchanges (p. 29) and to establish a drug utilization management system for consumer safety (p. 30). The contract further dictates the terms and conditions of PBM contracts, such as the required term (not to exceed three years) and provisions addressing material breach (p. 30).

The Court must next identify Caremark's challenged conduct and determine whether that conduct falls within the scope of federal directives. Louisiana alleges that together CVS and Caremark "impose crippling fees on independent pharmacies"

---

[1] Ultimately, the Fifth Circuit affirmed the district court's remand order, finding that the defendants did not satisfy the "connected to or associated with" element of federal officer removal. The Supreme Court granted the defendants' writ of certiorari, which argued that the Fifth Circuit's application of the test was too confined and urged a broader application. The facts and contract at issue in the case at bar are distinguishable from *Plaquemines Par.*, and, as discussed below, the Court finds sufficient association under the fourth element. Thus, a Supreme Court ruling reversing *Plaquemines Par.* would not likely affect the outcome of this case. In any event, other Fifth Circuit precedent supplies the applicable test. *Latiolais, St. Charles II.*

and charge pharmacies various remuneration, claw back, and administrative fees which harm independent pharmacies, who lack bargaining power in the allegedly CVS-controlled market. (Rec. Doc. 1-1, ¶29; 33-40). The FEHBA contract dictates specific rules—including rules affecting pricing and fees—which the PBM and carrier must follow. (Rec. Doc. 1-3, p. 26, (a)Transparency Standards). Contracts between Caremark and its FEHBA clients, must contain certain requirements regarding pharmacy reimbursement, fees, and pricing. (Rec. Doc. 22-1, ¶5). By virtue of the FEHBA contract, Caremark is subject to OPM monitoring, oversight, and audits. (¶6-7). In fact, OPM, through the Inspector General Officer of Audits, has audited Caremark's PBM services and published audit reports. (¶7). Considering Louisiana's specific challenge and Caremark's federally-dictated contracts, the Court finds that Caremark was "acting under" a federal directive vis-à-vis pricing and fees, at least insofar as Caremark provided PBM services pursuant to carriers' contracts with OPM. See also *Gov't of Puerto Rico v. Express Scripts, Inc.,* 119 F.4th 174, 190 (1st Cir. 2024) (affirming federal officer jurisdiction on similar facts involving Caremark and OPM FEHBA contracts, despite the plaintiff-government's disclaimer that its claims did not apply to federal contracts); and *Hunt*, 140 F.4th at 197 (same).

### D. <u>Whether Caremark asserts a colorable federal defense.</u>

Having found that Caremark meets the second, third, and fourth elements for federal officer removal, the Court last considers the first element—whether Caremark has asserted a colorable federal defense.

> To be "colorable," the asserted federal defense need not be "clearly sustainable," as section 1442 does not require a federal official or person acting under him to win his case before he can have it removed. Instead, an asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous. Certainly, if a defense is plausible, it is colorable.

*Latiolais*, 951 F.3d at 296–97 (cleaned up).

Caremark contends that Louisiana's claims are preempted by FEHBA, which authorizes OPM to contract with health carriers subject to the statute's requirements. 5 U.S.C. §8902. FEHBA explicitly preempts any state or local law or regulation which relates to health insurance or plans. §8902(m)(1). The contract discussed above, which dictates terms and provisions of any PBM subcontract, is an OPM contract contemplated by FEHBA. The Louisiana statute upon which the state relies, La. R.S. 22:1860.3, is a state law which relates to health insurance. FEHBA expressly preempts it, thereby presenting a colorable federal defense. See also *Puerto Rico*, 119 F.4th at 190, and *Hunt*, *supra*, agreeing with *Puerto Rico*. Caremark has met its burden to show federal jurisdiction under the federal officer removal statute.

## II.    **State Sovereignty.**

Louisiana maintains that its *parens patriae* duty to assert quasi-sovereign claims to protect its citizens' health, safety, and welfare overcomes Defendants' position. Whether a state may exercise its *parens patriae* right answers questions regarding the propriety of the state's presence in a suit, such as questions on issues of standing (e.g. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601, 102 S. Ct. 3260, 3265 (1982)), and *Harrison v. Jefferson Par. Sch. Bd.,* 78 F.4th 765, 769 (5th Cir. 2023)) and indispensability (e.g. *Hood ex rel. Mississippi v. Microsoft Corp.,* 428 F. Supp. 2d 537, 542 (S.D. Miss. 2006)). Defendants have not challenged Louisiana's standing or its right to bring the suit.

Nevertheless, Louisiana argues that whether Defendants acted pursuant to federal officer direction is irrelevant, because it is not stepping into the shoes of any citizen in this suit, but rather, Louisiana brings the suit on its own behalf. (See discussion in *Harrison*, 78 F.4th at 769.) Thus, the state argues, a favorable ruling on its claims would not affect Defendants' federal contractual obligations, such that federal officer removal cannot apply. The state's logic is unpersuasive. A judgment that Caremark violated Louisiana's PBM statute or otherwise engaged in unfair practices regarding its drug pricing and fees would necessarily call into question Caremark's actions vis-à-vis the FEHBA contract or at least pit the state's PBM laws against FEHBA. The effect of the FEHBA contract on Caremark's actions is an

11

essentially federal question unaffected by the nature of the state's suit or the capacity in which it sues.

Louisiana also attempts to assert its Eleventh Amendment immunity. "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011), citing *Lapides v. Bd. of Regents,* 535 U.S. 613, 616, 122 S.Ct. 1640 (2002). As evidenced by the clear language of the amendment, the Eleventh Amendment is inapplicable where a state is the plaintiff. See *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co*., 625 F.2d 22, 24, fn. 6 (5th Cir. 1980); *Illinois v. City of Milwaukee, Wis.,* 406 U.S. 91, 100–01, 92 S. Ct. 1385, 1391, 31 L. Ed. 2d 712 (1972), (abrogated on other grounds), discussing *Ames v. Kansas*, 111 U.S. 449, 470—472, 4 S.Ct. 437, 447—448 (1884). Accordingly, Louisiana cannot rely on Eleventh Amendment immunity to prevent removal.

## Conclusion

For the foregoing reasons, the Court recommends that the State of Louisiana's Motion to Remand (Rec. Doc. 19) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 29th day of October, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE