UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STATE OF LOUISIANA,** | ( | **CASE NO. 6:25-cv-01130** |
| | ( | |
| **v.** | ( | |
| | ( | **JUDGE DAVID C. JOSEPH** |
| | ( | |
| | ( | |
| **CAREMARKPCS HEALTH, LLC,** | ( | **MAGISTRATE JUDGE CAROL B.** |
| **CVS HEALTH CORP.** | ( | **WHITEHURST** |
| | ( | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................... ii

**TABLE OF AUTHORITIES** .............................................................................................. iii

    I.    Introduction ................................................................................................... 1

    II.    Legal Standard .............................................................................................. 2

    III.    The State's Other Pending Cases are Properly Split Claims. ....................... 3

    IV.    The State's Petition sufficiently alleges LUTPA violations. ........................ 5

      A. The Petition States a Valid LUTPA claim for Defendants' Spread Pricing. ... 8

      B.    The Petition States a Valid Claim for a violation of LUTPA based on Defendants' Improper Reimbursements. ............................................................................... 9

      C.    The Petition States a Valid Claim for a violation of LUTPA based on Defendants' Improper Fees. ........................................................................................... 10

      D.    The Petition States a Valid Claim for a violation of LUTPA based on Defendants' Rebate Practices. ....................................................................................... 11

    V.    Conclusion ................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*ASARCO, LLC v. Montana Res., Inc.*, 858 F.3d 949, 955 (5th Cir. 2017) .................................. 3
*Christopher v. Harbury*, 536 U.S. 403, 416, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) .............. 9
cite *J &L Family, L.L.C. v. BHP Billiton Petroleum Props. N.A.*, 2018 WL 1462108, at *5 (W.D. La. Mar. 23, 2018) ................................................................................................................. 13
*Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) ................................................................ 9
*Friends of the Earth v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996).......... 3, 4
*Gen. Land Office v. Biden*, 71 F.4th 264 (5th Cir. 2023)............................................................... 3
*Gorilla Energy Servs., LLC v. United Res., LLC*, 2024 WL1216574, (E.D. La. Marc. 21, 2024) 14
*In re EpiPen*, 44 F.4th 959, 989 (10th Cir.) ................................................................................. 12
*Jefferson v. Chevron U.S.A. Inc.*, 97-2436, p. 13 (La. App. 4 Cir. 5/20/98), 713 So. 2d 785, 792 ................................................................................................................................................ 14
*Kaspar Wire Works, Inc. v Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978) ........... 3
*Louisiana v. Integrity*, 2023 U.S. Dist. LEXIS 172096, at *13-14 (W.D. La. Sep. 13, 2023) ....... 3
*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) .......................................... 2
*Pinero v. Jackson Hewitt Tax Serv.*, 638 F. Supp. 2d 632, 636 (E.D. La. 2009)............................ 7
*Quality Envtl. Processes, Inc. v. I.P. Petro. Co.*, 2013-1582 (La. 05/07/14); 144 So. 3d 1011 ... 13
*State of Louisiana v. Caremark PCS Health, LLC, et al.*, No. 6:25-cv-001126 (W.D. La) ........... 3
*State of Louisiana v. Caremark PCS Health, LLC, et al.*, No. 6:25-cv-001126 (W.D. La.) ........ 11
*State of Louisiana v. Sanofi-Aventis U.S., LLC, et al.*, No. 2:23-cv-22978 (D.N.J.)...................... 5
*Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) ..................................... 6, 9, 14
*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) .................................... 9
*Waste Control Specialists, LLC v. Envirocare of Tex., Inc.*, 199 F.3d 781, 786 (5th Cir. 2000) ... 8

**Statutes**

La. R.S. 22:1657.1 ........................................................................................................................ 11
La. R.S. 22:1860.3 ........................................................................................................................ 10
La. R.S. 22:1867(A)........................................................................................................................ 8
La. R.S. 22:1868.1 and 1870......................................................................................................... 11
Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq* ........................................... 1, 2, 6

**Rules**

Fed. R. Civ. P. 15(a)(2)................................................................................................................. 15

The State of Louisiana's Petition details violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, *et seq.* based on CaremarkPCS Health, L.L.C. and CVS Health Corporation's ("Defendants'") participation in the pharmaceutical benefits management industry (hereinafter, generally, "PBM"). As part of a complex, vertically-integrated health care conglomerate, Defendants have significant power in the pharmaceutical industry. (*See* Pet. ¶ 2). The Petition catalogs the abuses stemming from Defendants' monopolistic influence and how they detrimentally affect independent pharmacies. Defendants filed a Motion to Dismiss for Failure to State a Claim. (*See* ECF Doc. 11-1). The State opposes the Motion and submits this response.

## I.     Introduction

The State filed its Petition, seeking injunctive and monetary relief based upon the Defendants' participation in the PBM market, which is highly concentrated and involves consolidation through ownership and control over other key players in the industry. (*See* Pet. at ¶ 2). Defendants' secretive negotiations with drug manufacturers, pharmacies, and health insurance plans allow it to control the pharmaceutical market to the detriment of patients, independent pharmacies, and payors. The State's petition details a vertically-integrated structure utilized by Defendants to control the price of prescription drugs at every level from formulary design through dispensing. (*See* Pet. at ¶ 2). Specifically, Defendants use their dominant PBM status to inflict economic harm on independent pharmacies, who must go through the PBMs, including Defendants, to serve the large percentage of their customers that have prescription drug coverage through their health insurers. Those health insurers are either owned/administered/controlled by or under contract with the PBM. (*See* Pet. at ¶¶ 13-25). The Petition further alleges harm caused by Defendants imposing crippling fees on independent pharmacies, which severely decreases the effective reimbursement rates, thereby affecting their overall economic stability. (*See* Pet. at ¶¶

28-38). This scheme causes financial ruin to Louisiana independent pharmacies who operate on small margins and without any bargaining power. (*See* Pet. at ¶ 40). Taking into account the high fees and the low reimbursements, these independent pharmacies, unlike their larger retail competitors (who are also part of the PBM scheme), are spending more to acquire the medications than they are receiving for them in payments and reimbursements. (*See* Pet. at ¶¶ 40, 41, 44). The exclusive contracts Defendants enter with large pharmacy chains and the practices associated therewith have the additional effects of independent pharmacy closures, restricted patient choice, higher customer cost for out-of-network pharmacies, and reduced access to medications. (*See* Pet. at ¶¶ 45-46). Additionally, the Petition describes Defendants' engagement in spread pricing, which allows them to profit from secret and separate negotiations with pharmacies on the one hand and health insurers on the other. (*See* Pet. at ¶ 47). The Petition details violations of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.* ("LUTPA"). Defendants' actions involve unfair and unscrupulous business practices, some that are expressly prohibited and designated as LUTPA violations by statute. (*See* Pet. at ¶¶ 51-59).

## II. Legal Standard

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969).

*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (some citation information

omitted).

### III.     The State's Other Pending Cases are Properly Split Claims.

Defendants contend the instant suit "constitutes impermissible claim splitting." (*See* ECF Doc. 11-1, p. 6; Pg. ID # 244.) "A court may find improper claim splitting where the claims in the more recent suit arise from the 'same nucleus of operative facts' as those advanced in the prior suit and might have been properly asserted in the prior suit." *Louisiana v. Integrity*, 2023 U.S. Dist. LEXIS 172096, at *13-14 (W.D. La. Sep. 13, 2023), citing *Kaspar Wire Works, Inc. v Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978). While the rule does not require the claims or parties to be identical in each suit, the parties must be in privity. *ASARCO, LLC v. Montana Res., Inc.*, 858 F.3d 949, 955 (5th Cir. 2017). The principle is rooted in *res judicata* and serves to protect the defendant from being harassed by repetitive actions based on the same claim. *Gen. Land Office v. Biden*, 71 F.4th 264 (5th Cir. 2023). Moreover, as noted by the Fifth Circuit Court of Appeals, "This rule finds particular application where . . . the plaintiff files the second complaint to achieve procedural advantage by "circumventing the rules pertaining to the amendment of complaints.'" *Friends of the Earth v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996).

Defendants argue, "This case should be dismissed because it arises out of the same nucleus of operative facts as two other pending suits filed by the State: (1) the Insulin Action and (2) the Rebate Action." (*See* ECF Doc. 11-1, p. 6; Pg. ID # 244). They narrowly focus on portions of each petition that allege improper rebate and fee practices, which are common not only to the cases at issue but to the national litigation landscape against PBMs in general.

The Rebate Action (*State of Louisiana v. Caremark PCS Health, LLC, et al.*, No. 6:25-cv-001126 (W.D. La)) is currently before this Honorable Court on a Motion to Consolidate filed by Defendants. Whether the actions will be considered in one suit, as opposed to separate suits, has

3

been briefed and is awaiting a decision by this Court. Defendants should not use an argument made in a separate, pending motion to dismiss all allegations raised herein. To avoid repetition, the State draws the Court's attention to its Memorandum in Opposition to the Motion to Consolidate that was filed in Case No. 6:25-cv-00126 (Attachment 1, Exhibit A). In short, the only common nucleus of operative facts is the harmful effect Defendants (and their participation in the abusive PBM industry) have on unwitting victims. The victims are different in the two suits. The Rebate Action is brought to protect the interests of Louisiana patients and the public at large. In contrast, the instant suit addresses the interests of state small businesses, specifically independent pharmacies. Next, the facts are different. The Rebate Action addresses Defendants' use of exclusionary formularies and group pricing organizations that inflate drug prices for consumers. The instant suit challenges Defendants' oppressive practices against independent pharmacies, including using their market dominance to under-reimburse them, impose crippling fees, engage in spread pricing, and restrict access to the complete terms of their contracts. The Rebate Action has an additional party, Zinc Health Services, LLC, who is not named in the instant suit and who has no privity with Defendants as it relates to harm caused to independent pharmacies. Additionally, the lawsuits were not filed separately to "achieve a procedural advantage by 'circumventing the rules pertaining to the amendment of complaints.'" *Friends of the Earth*, 95 F.3d at 362 (5th Cir. 1996). Rather, in this complex subject matter, the State maintains that a single suit will blur the specific harms suffered by each class of victims, complicate the legal theories and their damage models, and lead to jury confusion. Despite Defendants' claim to the contrary, the suits are not "virtually identical" and are not an effort to engage in "piecemeal" litigation. (*See* ECF Doc. 11-1, p. 7; Pg. ID # 245). The victims and harm are distinctly different

Regarding the Insulin Action, (*State of Louisiana v. Sanofi-Aventis U.S., LLC, et al.*, No.

2:23-cv-22978 (D.N.J.)), that suit is product specific and part of an MDL (Multi-District Litigation) that involves only the artificial inflation of insulin prices, not other prescription drugs. It is limited in nature and involves far more parties than the two defendants named herein. Other states are involved, as well as manufacturers. The only common nucleus of operative facts is a recognition by the State that Defendants are part of an abusive PBM scheme that unlawfully restricts competition, increases profits internally, and causes harm. Again, the victims are different. The Insulin Action is meant to protect consumers with diabetes who are overpaying for their lifesaving medication–Insulin-or who are denied access to it because it is made unaffordable by PBMs and manufacturers. The instant suit is meant to protect independent pharmacies who cannot compete with PBMs, who engage in anticompetitive conduct and steer patients to their affiliated pharmacies. These small businesses are unable to compete against a PBM-manipulated system. They cannot navigate contractual terms imposed by PBMs when they have no bargaining power. Next, the facts giving rise to the claims are different. The Insulin Action describes an illegal pricing scheme driven by rebate agreements. The instant suit describes unfair reimbursement negotiations, imposition of exorbitant administrative fees exclusively charged to independent pharmacies, and spread pricing. (*See* Pet. at ¶¶ 56-59).

Because the factual predicates are not the same, the parties are not identical, the legal claims are different, and the victims' interests are not shared, the court should deny the Motion to Dismiss on this ground. The State's separate suits are legally justified and are designed, not to invoke procedural advantages or circumvent rules, but to avoid confusion in this complex litigation.

    **IV.**   **The State's Petition sufficiently alleges LUTPA violations.**

To state a LUTPA claim, the State must show Defendants engaged in "unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1409.  An "unfair trade practice" is "a practice that is unethical, oppressive, unscrupulous, or substantially injurious." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).  Defendants contend "the State has not plausibly alleged any facts to support its LUTPA claim . . ." (*See* ECF Doc. 11-1, p. 11; Pg. ID # 249).   The Petition proves otherwise.

The allegations, taken as true, satisfy the elements of a LUTPA claim.  Defendants control multiple, interlocking stages of both the pharmaceutical supply and reimbursement chain, from insurance to drug pricing, to pharmacy distribution and dispensing. (*See* Pet. at ¶ 13).  This vertical structure reaching across multiple tiers of the healthcare system drastically impacts independent pharmacies in Louisiana.  To serve patients that have prescription drug coverage through their health insurance, pharmacies must work through PBMs that administer prescription drug benefits on behalf of health insurers. (*See* Pet. at ¶ 23).  Pharmacies that are part of a PBM's Pharmacy Network purchase drugs from a Manufacturer or wholesaler and once the drugs have been dispensed to a patient, the PBM reimburses the pharmacy pursuant to the pharmacy's contract with the PBM.  (*See* Pet. at ¶ 26). Independent pharmacies have no choice but to contract with Defendants (one of only three controlling PBMs nationwide) if they wish to serve patients with heath insurance.  (*See* Pet. at ¶¶ 24 and 27).  Defendants' market power allows them to decide which drugs will be reimbursed and at what rate, without any transparency in their calculations. (*See* Pet. at ¶ 28). The Petition alleges Defendants under-reimburse independent pharmacies on a net basis less than chain pharmacies for the same drugs and at a net rate that are below what it costs independent pharmacies to even acquire the medications. (*See* Pet. at ¶¶ 42 and 44).

Additionally, Defendants impose crippling fees on independent pharmacies, which has the net effect of severely decreasing the actual reimbursements they receive, thereby affecting the

6

financial viability of independent pharmacies. (*See* Pet. at ¶ 29). The Petition specifies in detail the types of fees used by Defendants to financially devastate independent pharmacies. (*See* Pet. at ¶¶ 33-38). Defendants control the market, which gives independent pharmacies no bargaining power even if they wished to decline to deal with them. (*See* Pet. at ¶ 29). Moreover, Defendants are engaging in spread pricing, profiting the difference between what they pay to a pharmacy and what they charge a health insurance plan. (*See* Pet. at ¶ 47). All of these unfair trade practices are causing actual harm to independent pharmacies, in the form of massive lost profits, business closures, and restricting customers' access to medication, particularly in underserved and rural areas. (*See* Pet. at ¶ 46).

Defendants' overarching complaint is that the allegations are conclusory and insufficient owing to the language "upon information and belief." (*See, e.g.* ECF Doc. 11-1, p. 12; Pg. ID # 250). As stated in *Pinero v. Jackson Hewitt Tax Serv.*, 638 F. Supp. 2d 632, 636 (E.D. La. 2009)(emphasis added):

> A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. [*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)]. ***It need not contain detailed factual allegations***, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007). ***In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.*** *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 2009 WL 941505, at *25 (5th Cir. 2009).

The Petition clearly establishes more than a "sheer possibility" that plaintiff's claims are true. Further, the State's use of "upon information and belief" leaves room for discovery that will reveal evidence of each element of the State's claim. Indeed, the State alleges throughout its Petition that Defendants' scheme is "complex," "opaque," "covert" and is the result of "obfuscating" and "manipulating." (*See* Pet. at ¶¶ 28, 39, 58, and 61). The secretive nature of

7

Defendants' operations is what has allowed them to perpetuate an illegal and monopolistic enterprise for as long as it has and should not be used to defeat a legal attempt to hold them accountable–certainly at this early pre-discovery stage.

### A. The Petition States a Valid LUTPA claim for Defendants' Spread Pricing.

Defendants argue the State's Petition does not plausibly allege that Defendants engaged in spread pricing without providing the requisite written notice under La. R.S. 22:1867(A). First, the State referenced the statute to show that Louisiana recognizes spread pricing as "an unfair method of competition and unfair practice" under LUTPA. (*See* Pet. at ¶¶ 48 and 54). Whether Defendants violated the statute may or may not be relevant in light of the fact that the State alleges it as an example of an abusive *scheme*, and not a stand-alone violation of that specific law. Further, whether Defendants gave written notice is a factual determination and/or an affirmative defense that is not appropriate for consideration of a Rule12(b)(6) motion. (*See Waste Control Specialists, LLC v. Envirocare of Tex., Inc.*, 199 F.3d 781, 786 (5th Cir. 2000)("The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim; it is not a procedure for resolving a contest about the facts or the merits of the case."))

Second, the law was amended just days before the filing of this petition to eliminate the written notice exception and make *all* spread pricing illegal. This evidences the legislature's recognition that notice does not cure the unfairness of spread pricing as a matter of law. Whether PBMs give notice or not to independent pharmacies, the practice is inherently unfair due to the uneven bargaining power between a main street pharmacy and a PBM that owns and operates the vast majority of the industry. Also, to the extent the Petition seeks prospective injunctive relief, the amendment makes notice irrelevant and cannot be a ground for dismissal.

Next, Defendants argue the State did not allege the spread pricing occurred "with such

8

frequency as to indicate a general business practice" as required by law. (*See, e.g.* ECF Doc. 11-1, p. 13; Pg. ID # 251). The Petition details "ongoing" abuses committed by Defendants, describing them as "systematic[]" negotiations that happen "across multi-tiers of the healthcare system" at "interlocking stages of the pharmaceutical supply and reimbursement chain." (*See* Pet. at ¶¶ 3, 5, 13, 58, and *infra*). Defendants posit that because the State did not specifically allege "how frequently" Defendants engaged in spread-pricing, they did not adequately allege it amounted to a "general business practice" so as to constitute a LUTPA violation. This ignores the Petition, read as a whole, that alleges Defendants' entire business structure and its operations with respect to independent pharmacies amount to "general business practice[s]" that are "unethical, oppressive, unscrupulous, or substantially injurious." *Turner*, 989 F.2d at 1422 (5th Cir. 1993). Moreover, if more information is deemed necessary to sufficiently plead this element of the claim, particularly after a meaningful opportunity for discovery, "the usual course of action. . . is to allow a plaintiff to amend his or her complaint[,]" not dismiss it. *Waste Control Specialists*, 199 F.3d at 786 (5th Cir. 2000).

### B. The Petition States a Valid Claim for a violation of LUTPA based on Defendants' Improper Reimbursements.

Defendants contend the claims related to reimbursement are insufficiently pled. To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief--including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). *See also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019), citing *Christopher v. Harbury*, 536 U.S. 403, 416, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) (elements of a plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

9

The Petition details an alleged practice by Defendants that involves, among other practices, "convoluted reimbursement formulas" wherein independent pharmacies are reimbursed on a net basis less than chain pharmacies for the same drugs and services." (*See* Pet. at ¶¶ 39, 41, and 42). The result is that independent pharmacies are often reimbursed at a rate below the cost of acquiring the medications, putting them at a net loss. (*See* Pet. at ¶ 44). Assuming this to be true and because La. R.S. 22:1860.3 expressly makes the commission of such acts "an unfair method of competition and unfair practice or act" under LUTPA, the claim is adequately pled. Additionally, and without doubt, the Petition gives Defendants fair notice that their reimbursement practices are being challenged. They are informed of the nature of the cause of action and can prepare a defense.

### C. The Petition States a Valid Claim for a violation of LUTPA based on Defendants' Improper Fees.

Defendants aver the Petition's allegations with respect to Defendants' fees is lacking. The Petition describes a scheme where drug pricing overlaps with reimbursement calculations, which then overlap with the imposition of fees. (*See* Pet. at ¶¶ 2, 3, 15). From the top down, Defendants, in a monopolistic market position, orchestrate and operate an illegal scheme that overprices drugs, then artificially suppresses reimbursement rates paid to independent pharmacies for those drugs, then charges them unpredictable fees that undermine any meaningful collection of reimbursement funds. (*See* Pet. at ¶ 33-44). This practice grossly affects independent pharmacies, often necessitating closures. (*See* Pet. at ¶ 45). The Petition details the different fees charged by Defendants (Performance based DIR Fees, Clawback Fees, Fixed or Variable DIR Fees, Rebated-Based DIR Fees, and Administrative Fees) and articulates the harmful effect these fees have on independent pharmacies. (*See* Pet. at ¶¶ 33-38, 45, and 46). The Petition alleges "Clawback Fees," which affect the ultimate reimbursement amount received by independent pharmacies, violate La. R.S. 22:1860.3, which prohibits improper reimbursements by PBMs and expressly deems them

10

impermissible unfair trade practices. Thus, the Petition sufficiently alleges facts to state a claim to relief that is plausible on its face. *Pinero*, 638 F. Supp. 2d at 636 (E.D. La. 2009).

### D. The Petition States a Valid Claim for a violation of LUTPA based on Defendants' Rebate Practices.

As an initial matter, Defendants object to the pleading of this claim as being outside the scope of LUTPA because it is an "action or transaction subject to the jurisdiction of . . . the insurance commissioner." (*See* ECF Doc. 11-1, p. 16; Pg. ID # 254). First, the Petition does not allege conduct based on rebates. Perhaps Defendants confused the instant Petition with the separate "Rebate Action" that names them and Zinc Health Services as defendants (*State of Louisiana v. Caremark PCS Health, LLC, et al.*, No. 6:25-cv-001126 (W.D. La.)), which is before this court awaiting a remand ruling. *See supra.* The paragraphs they cite are Pet. ¶¶ 28, 37. Paragraph 28 in the instant petition addresses *reimbursements*, not rebates. Paragraph 28 **in the Rebate Action**, on the other hand, addresses the need for transparency of rebates. Similarly, Paragraph 37 in the instant petition addresses *rebate-based DIR fees*, not rebates. Paragraph 37 **in the Rebate Action**, however, addresses negotiation of rebates. Nothing in the instant petition challenges Defendants' rebate practices; thus, no LUTPA exemption applies.

Even if rebates were challenged in the Petition, Defendants' argument is based upon the newly amended laws, La. R.S. 22:1868.1 and 1870. La. R.S. 22:1657.1, the law in effect at the time the Petition was filed, provided for transparency and annual reporting of rebate amounts and was silent on enforcement authority. Prior to the statutory grant of authority to the Insurance Commissioner, the Attorney General was the proper party, with proper jurisdiction, to enforce a general prohibition against unfair trade practices. Because the Petition, in part, addresses Defendants' past conduct in its prayer for restitution and damages, the prior law applies. Thus, even if rebate practices are tangentially involved in this suit, they are not outside the scope of

11

LUTPA and the Attorney General has the authority to enforce that Act.

Second, Defendants aver the rebate practices do not constitute unfair or deceptive conduct within the meaning of LUTPA, claiming, "The Petition is devoid of any facts relating to rebates that demonstrate the sort of "egregious" conduct that would rise to the level of an unfair business practice within the meaning of LUTPA." (*See* ECF Doc. 11-1, p. 20; Pg. ID # 258). This is because the Petition does not challenge the practice of negotiating rebates; instead, it challenges "the associated DIR fees [that] are deducted from the pharmacies' reimbursements." (*See* Pet. at ¶ 37). This allegation is wholly separate from the Rebate Action, which Defendants attempt to conflate to their advantage. This action, which is separate and distinct, contests the imposition of fees related to rebates–not the rebate process itself.

Even if the Petition peripherally involves Defendants' rebate practice, it clearly falls within the scope of an unfair trade practice. Defendants attempt to characterize their rebate system as a "normal competitive tool . . . to stimulate price competition." (*See* ECF Doc. 11-1, p. 21; Pg. ID # 259, citing *In re EpiPen*, 44 F.4th 959, 989 (10th Cir.)). However, the practice of pressuring manufacturers to offer large rebates in exchange for favorable placement on drug formularies, causing the manufacturers to, in turn, raise the list prices of their drugs, which harms patients and payors is clearly unfair by any jurisprudential definition analyzing LUTPA claims. Its sole purpose is to harm the competition, which is the very basis for this claim filed on behalf of independent pharmacies, who are Defendants' competition. And despite Defendant's claim to the contrary, the Petition is far from silent regarding an allegation that Defendant's purpose was to harm competition. It is replete with claims of causing "economic hardship" to independent Louisiana pharmacies, "restricting competition," "abusing its market power to inflict economic harm on independent pharmacies," "put[ting] pressure on pharmacies, particularly independents," closing

pharmacies, "limit[ing] the ability of independent pharmacies to join networks," "threaten[ing] to remove independent pharmacies from their network," "retaliat[ing] or penal[izing] independent pharmacies." (*See* Pet. at ¶¶ 2, 3, Heading B, 44, 45, 46,48). Thus, while the State maintains that the rebate practice does not form a distinct element of this claim, it nevertheless defends the sufficiency of the Petition as to the allegation of an intent to harm the competition.

Next, the Defendants claim the Petition does not meet Rule 9(b)'s heightened pleading standard for alleging a 'deceptive' act or fraud. (*See* ECF Doc. 11-1, p. 22; Pg. ID # 260). LUTPA makes it unlawful to engage in unfair *or* deceptive acts or practices. La. R.S. 51:1405(A). While the statute does not specifically define these terms, jurisprudence recognizes LUTPA claims that allege "fraud, misrepresentation, deception *or* other unethical conduct." *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633, p. 11 (La. 4/23/10), 35 So.3d 1053, 1059. (emphasis added). "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct "offends established public policy and … is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* In *Quality Envtl. Processes, Inc. v. I.P. Petro. Co.*, 2013-1582 (La. 05/07/14); 144 So. 3d 1011, 1026, the Louisiana Supreme Court further clarified the goal of LUTPA: "protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business competition."

Defendants argue that because the State's LUTPA claim is based on Defendants' deceptive conduct, the Petition must satisfy the heightened pleading requirements for fraud. In support, they cite *J &L Family, L.L.C. v. BHP Billiton Petroleum Props. N.A.*, 2018 WL 1462108, at *5 (W.D. La. Mar. 23, 2018). However, the plaintiff in that case specifically pled a cause of action for a Louisiana tort fraud claim, in addition to their LUTPA cause of action. The court found the heightened pleading requirement attached to the LUTPA claim **because** it was based on the same

13

underlying fraud analyzed under the separate tort fraud law. Here, the State does not plead "fraud" or "deceptive conduct," and Defendants cannot insert that cause of action into the petition to claim the regular pleading requirements are supplanted by the heightened ones related to fraud.

Further, Defendants cite to *Gorilla Energy Servs., LLC v. United Res., LLC*, 2024 WL1216574, (E.D. La. Marc. 21, 2024). The LUTPA claim was dismissed in that case, not because of a failure to plead fraud with particularity, but because the Complaint "did not contain any facts that suggest any egregious behavior on [Defendant's] part that would elevate this claim to the level of a LUTPA claim." *Id.* at. *8. This holding highlights the scope of LUTPA; it is not limited to deceptive practices; rather LUTPA provides a cause of action both for trade practices which are 'unfair' and those which are 'deceptive.'" *Jefferson v. Chevron U.S.A. Inc.*, 97-2436, p. 13 (La. App. 4 Cir. 5/20/98), 713 So. 2d 785, 792. "An act is not required to be both unfair and deceptive." *Id.* "A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." *Id.*

Thus, while misleading conduct may overlap with fraud in some cases, it does not automatically equate to fraud under LUTPA unless it involves specific elements of fraud. In the instant matter, Paragraphs 51-59 of the Petition articulate the State's cause of action. Nowhere is fraud pled. Instead, facts are set forth to show that Defendants' conduct is "unethical, substantially injurious to consumers, . . . and violates standards of fair dealing and public policy." *Turner v. Purina Mills, Inc.*, 989 F.2d at 1422 (5th Cir. 1993). This satisfies the requirement to survive a Rule 12(b)(6) challenge.

### V. Conclusion

For the foregoing reasons, Defendants have failed to establish that no claim has been stated upon which relief can be granted, and their Motion to Dismiss should be denied.

If the Court is inclined to dismiss, the State respectfully requests the Court afford the State an opportunity to amend the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.")

RESPECTFULLY SUBMITTED this 5th day of December, 2025:

/s/ Ryan M. Nolan
**LIZ MURRILL**
**ATTORNEY GENERAL FOR**
**THE STATE OF LOUISIANA**
Michael David Dupree
John Joseph Kelley
Ryan Matthew Nolan
1885 North 3rd Street, 4th Floor
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Facsimile: (225) 326-6499
dupreem@ag.louisiana.gov
kelleyj@ag.louisiana.gov
nolanry@ag.louisiana.gov

**SALIM-BEASLEY LLC**
Robert L. Salim
Lisa Causey-Streete
1901 Texas St. Natchitoches, Louisiana 71457
Telephone: (31) 352-5999
Facsimile: (318) 352-5998
skeeter@salim-beasley.com
lcausey@salim-beasley.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all interested counsel by ECF filing on December 5, 2025. All counsel who are not CM/ECF participants will be served

15

a true and complete copy of the foregoing via First Class Mail.

/s/ Ryan M. Nolan

16